IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| YOURTRAVELBIZ.COM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 07-CV-030-WDS |
| | ) | |
| EXECUTIVE SYSTEMS OF UNITED | ) | |
| SUCCESS, LLC., and CHARLES KING, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is defendant Executive Systems of United Success, LLC's (ESUS) motion to dismiss or to transfer venue (Doc. 16) in which defendant Charles King has joined (See, Doc. 10 filed in 07-295). The plaintiff has filed a response to the motion (Doc. 25) and the defendants a reply (Doc. 26). This case was originally two separate actions, now consolidated, which were filed by plaintiff, Yourtravelbiz.com (YTB). The initial action, *Yourtravelbiz.com v. Executive Systems of United Success, LLC.,* 07-30-WDS, seeks declaratory judgment that YTB has not breached an agreement with ESUS; that YTB acted in conformity with the ESUS Agreement; and that neither YTB nor its agents slandered ESUS; and that ESUS is not entitled to damages from YTB.

In the consolidated action, *Yourtravelbiz.com v. King*, 07-295-WDS, YTB has sued Charles King, an officer of ESUS, seeking to enjoin him from allegedly continuing to breach his non-compete and non-solicitation obligations under two agreements with YTB and further alleges that King is using a website, www.ytbscandal.com, to encourage other individuals and businesses to end their business relationships with YTB.

**BACKGROUND**

The plaintiff, YTB is a publically traded, Delaware corporation with its principle place of business in Wood River, Illinois. YTB sells on-line travel agency businesses nationwide. The defendants, King and ESUS, are both Georgia residents. King is domiciled in Jasper, Georgia, and ESUS is a Georgia limited liability company with its principal place of business in Woodstock, Georgia. ESUS has three owners or members, all of whom reside in the Northern District of Georgia.[1]

YTB sells, inter alia, on-line travel agencies to individuals or entities, known as Referring Travel Agents (RTAs). YTB charges RTAs a one-time set up fee and monthly payments. YTB sets up the websites for the RTAs to use, and those websites are connected with TYB's web support network. RTAs then direct customers to the websites where customers can book travel. Commissions are earned by the RTAs based on the customer bookings. In addition, YTB contracts with individuals, known as Independent Marketing Representatives (IMRs), who market and sell the on-line agencies and are considered the sales force of YTB. IMRs enter into a contract with YTB, an "Independent Marketing Representative Terms and Conditions Agreement," which allow them to market and sell the YTB on-line travel agencies to others.

King became an IMR in October of 2004 for YTB.[2] The transaction that led to his taking this position took place both over the telephone and via the internet. (King Aff., ¶ 7) King subsequently became an RTA and entered into the RTA agreement via the Internet (*See*, Doc. 25). Both the RTA and the IMR agreements provide that Illinois law shall govern, that the

---

[1] The owners of ESUS are Charles King, Peter Psareas and Paul Psareas.

[2] King's affidavit provides that as a Marketing Representative (IMR) he worked out of his home in Georgia and recruited both new referring travel agents and new marketing reps for YTB. At some point thereafter King earned the designation "top salesman." (King affidavit at 7.)

parties must arbitrate disputes in Edwardsville, Illinois, and that the agreements were to become binding upon their acceptance at YTB at its home office in Edwardsville (*See*, Doc. 25, Exs.1A, 1B)

In December of 2005, King and his two partners started defendant ESUS to market and sell YTB opportunities, both IMR and RTA. King and ESUS proposed a direct mail marketing strategy to YTB, which YTB apparently did not finally approve. ESUS contends that the essential element of its success was a direct mail marketing program which was designed to offer a placement program to IMRs who joined YTB through ESUS. ESUS would place new IMRs under the sponsorship of existing IMRs, thereby increasing the existing IMRs commissions. The existing IMRs were to pay ESUS for the right to be included in the marketing program. King indicates in his affidavit that "a flood" of new IMR recruits were created, multiplying the commissions of the existing IMRs. (King Aff. ¶ ¶ 10-11). King contends that in May of 2006, Thayer C. Lindauer, vice president and general counsel of YTB approved the ESUS pamphlets and ESUS began printing these pamphlets. Lindauer does not agree that he finally approved the distribution of the mass marketing pamphlets, and therein lies the heart of the disagreements that led to this litigation (Lindauer Aff., Doc. 25, Ex. 1). In January of 2007, YTB terminated King as an IMR and cut its ties with ESUS.

The defendants seek to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue, or, in the alternative, to transfer venue to the Northern District of Georgia. Neither party challenges the jurisdiction of this Court over this action or over the defendants.

## ANALYSIS

### 1. Motion to Dismiss

The defendants seek dismissal under Rule 12(b)(3). In this circuit a "challenge to venue based upon a forum selection clause can appropriately be brought as a motion to dismiss the

complaint under Federal Rule of Civil Procedure 12(b)(3)." *Muzumar v. Wellness Int'l Network, Ltd.,* 483 F.3d 759, 760 (7th Cir. 2007). It is also well settled in this circuit that "under either federal or Illinois law, forum selection clauses are valid and enforceable." *Id.* at 761 (*citing IFC Credit Corp. v. Aliano Bros. Gen Contractors, Inc.,* 437 F.3d 606 (7th Cir. 2006)). The record is clear in this case that the parties, YTB, King and ESUS entered into contracts that included a forum selection clause of Illinois. Therefore, the defendant's motion to dismiss based on Rule 12(b)(3) for improper venue is **DENIED**.

    **2.**    **Motion to Transfer Standards**

In the alternative, the defendant seeks transfer of venue pursuant to 28 U.S.C. § 1404(a), which provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Seventh Circuit has held that the trial court should consider "the relative ease of access to sources of proofs; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; the possibility of a view of the premises; the state of the court calendar both in the District where the case is pending and in the District to which it is sought have the case transferred." *Chicago R.I. & R.P. Co. v. Igoe*, 220 F.2d 299, 303 (7th Cir. 1955).

"In passing on a motion for transfer, the district judge must consider the statutory factors in light of all the circumstances of the case. The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). Furthermore, "[t]he movant…has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Id.* at 219-20. However, "[l]ess of a showing of inconvenience is needed for a § 1404(a) transfer than that for a *forum non*

4

*conveniens* dismissal." *Id.* at 220.

### A. Plaintiff's Choice of Venue

Defendant argues that plaintiff's choice of venue in this case is not entitled to deference because all of the critical events occurred in Georgia. While courts generally respect a plaintiff's choice of forum, the Seventh Circuit has held that a plaintiff's freedom to select its own forum "has minimal value where none of the conduct complained of occurred in the forum selected by the plaintiff…." *Igoe*, 220 F.2d at 304 (quoting *Josephson v. McGuire*, 121 F. Supp. 83, 84 (D.C. Mass. 1954)). In the record on this case, plaintiff has established that it is headquartered in Edwardsville, Illinois, which is within the Southern District of Illinois. In addition the underlying employment agreements provide that the laws of the state of Illinois shall apply to all disputes. The defendants assert that all of the critical events occurred in Georgia, but the record simply does not support this contention. Although the relevant marketing programs and materials were produced in Georgia, the record seems to reflect that e-mail communications occurred between Illinois and Georgia on a regular basis (*see* Lindauer Aff.), and that the issue of whether there was final approval of the marketing plans occurred in the Southern District of Illinois. Moreover, King, himself, traveled to Edwardsville to meet with Lindauer in March of 2006, to discuss the marketing materials in question.

### B. Convenience of the Parties

Defendant maintains that the Northern District of Georgia is a more convenient location for the parties because all of the events leading up to the filing of these law suits occurred in Georgia, however, plaintiff asserts that the state with the most critical connections is Illinois because of the contractual agreements. "[T]he logical starting point for analyzing convenience is to consider the parties' residences." *Robertson*, 42 F. Supp.2d at 657. Clearly, the defendants are residents of Georgia, while the plaintiff is a resident of the state of Illinois. Defendant King

asserts that it would be inconvenient for him to attend proceedings in this district because that would take him away from his business and families, and, in addition, King is handicapped because he has an amputated leg which has resulted in his limited mobility.  Although the Court is not unsympathetic to King's physical condition, the Court notes that he has traveled to this district before, and that it would be reasonable to expect him to do so in this case.

### C.  Convenience of Witnesses

Defendants also maintain that the Northern District of Georgia is more convenient for the vast majority of witnesses in this case.  The defendants have identified some 79 witnesses, most of whom are located in Georgia, while the plaintiff has identified 4 witnesses in this district.  In these cases, "the court must look to the nature and quality of the witnesses' testimony with respect to the issues of the case." *Hanley v. Omarc, Inc.*, 6 F. Supp.2d 770, 775 (N.D. Ill. 1998).  Here, it is unclear to the Court what the nature of these witnesses' testimony will be, therefore, the Court cannot weigh that factor in this case.

Of course, "the court must…consider whether these witnesses will be subject to compulsory process…." *Omarc, Inc.*, 6 F. Supp.2d at 775.  Defendant's witnesses would only be subject to compulsory process if defendant's motion to transfer were granted. However, the defendants can avail themselves of the modern technology of videotaped depositions which may be used for trial testimony if necessary.

### D.  Interest of Justice

Finally, the Court must consider the interests of justice in its analysis.  Here, the plaintiff, and its choice of forum, the forum selection clause in the agreements between the parties all warrant in favor of this action remaining in the Southern District of Illinois.

### CONCLUSION

Accordingly, the Court **DENIES** defendants' motion to dismiss and motion to transfer

venue on all grounds raised.

**IT IS SO ORDERED.**

**DATED: May 2, 2007.**

**s/ WILLIAM D. STIEHL**
**DISTRICT JUDGE**
